IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JAMES STARK,**                         :
            **Plaintiff**            :    **CIVIL NO. 1:CV-11-00003**
                                     :
   **v.**                              :    **(Judge Rambo)**
                                     :
**ERIC J. HOLDER, JR.,** *et al.***,**   :
                                     :
            **Defendants**          :

## **M E M O R A N D U M**

Plaintiff James Stark, is a federal inmate currently incarcerated at the Federal Correctional Institution at Allenwood Low ("LSCI-Allenwood") in White Deer, Pennsylvania. On January 2, 2011, Stark filed the instant petition for a writ of mandamus, seeking declaratory or mandamus relief pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 1361, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 702. (Doc. 1.) Plaintiff alleges that Bureau of Prisons ("BOP") officials have not provided him with sufficient information to help him determine if his participation in certain prison skills development programs has been sufficient to entitle him to placement in a Residential Re-entry Center ("RRC") in accordance with the Federal Prisoner Re-entry Initiative provision of the Second Chance Act of 2007, 42 U.S.C. § 17541(a)(1)(G). As relief, Plaintiff seeks an order compelling Defendants to provide him with a listing of incentive programs for prisoner participation in skills development programming.

Before the court are cross-motions for summary judgment, filed by all Defendants and Plaintiff. For the reasons that follow, the court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment.

I. **Background**

In addressing the instant motions, the court will first set forth the relevant facts and procedural history. In setting forth the relevant facts, the court will note any factual disputes between the parties by presenting both parties' contentions.

A. **Facts**

On October 28, 2008, Plaintiff was sentenced to a term of imprisonment of sixty (60) months in the United States District Court for the Eastern District of Virginia. (Doc. 19 ¶ 2.) Assuming Plaintiff earns all of his good time credit, his projected release date from the BOP is October 18, 2012. (*Id*. ¶ 3.)

Plaintiff has been incarcerated at LSCI-Allenwood since December 8, 2008. (*Id*. ¶ 1.) On February 22, 2010, Plaintiff submitted administrative remedy request 578783-F1 to LSCI-Allenwood's Warden, stating:

> I have completed many educational and institutional programs during my incarceration. The Second Chance Act contains a Federal Prisoner Reentry Initiative which provides for incentives for program participation under 42 U.S.C. § 1754 [sic]. I am requesting

> information about the Initiative so that I know that I am taking the correct programming, in order to qualify to the incentives. My Case Mgr was unable to provide this information to me during the latest team on 1-13-10. I filed a BP-8 re this issue and was informed that the RRC placement would be decided at 17 months from release. I need this info now, because if I wait until 17 months it will be too late to take full advantage of program options.

(*Id.* ¶ 4; Doc. 1, Ex. B.) In response to this request, the Warden informed Plaintiff:

> The Bureau of Prisons encourages inmates to participate in a variety of programming in order to assist them with reintegration in society . . . . However, while program participation is an important consideration, there is no requirement that inmates receive a 12 month recommendation. An RRC recommendation is based on a variety of factors on an individual, case by case basis for each inmate.

(Doc. 19 ¶ 5; Doc. 1, Ex. B.) On March 16, 2010, Plaintiff appealed the Warden's response to the BOP's Regional Director, stating:

> I disagree with the Warden's response to my BP-9 (Response #578783-F1), because it does not address the issues I raise. I am requesting information on what kind of incentives for program participation are contained in the Fedearl Prisoner Re-Entry Initiative of the Second Chance Act under 42 U.S.C. § 17541. I have asked this question to my case manager and also to the Warden. Both responses indicate that I will be considered for RRC placement at 17 months before release. The Warden's response encourages me "to participate in a variety of programming." However, if I do not know which programs will help me most in consideration for maximum RRC placement, I may not be utilizing my programming choices correctly. If I wait until 17 months to change my focus, it will be too late to help me maximize my halfway house time. I am asking for the regulations. If they do not exist, then why don't they exist?

(Doc. 19 ¶ 6; Doc. 1, Ex. B.) The Regional Director denied Plaintiff's appeal, stating:

> Program Statement 5322, *Inmate Classification and Program Review*, provides policy and procedures for the classification and subsequent review of the security, custody and program needs of inmates who have been designated for service of a sentence. The program plan should include work and programming activities which will assist the inmate to develop skills to make a successful transition back into the community. Some recommended programs may provide an immediate incentive while other have long-range benefits. The information and program recommendations are added to the Inmate Skills Development Program (ISDS), which has been developed and implemented Bureau-wide to gather pertinent information into a centralized electronic site. The SCA also provides for a review for up to 12 months in a Residential Re-Entry Center (RRC).
>
> A review of your appeal reveals you are serving a 60-month term with an October 18, 2012, projected release date. Program Statement 7310.04, *CCC Utilization and Transfer Procedures*, indicates inmates are considered for RRC placements 17-19 months from their projected release date. As indicated by the Warden, your need for community programs will be reexamined during that time frame. This review will be completed in compliance with the above policy and the provisions of the SCA. You may also seek assistance from your unit team for explanation of the SCA criteria. Accordingly, your appeal is denied.

(Doc. 19 ¶ 7; Doc. 1, Ex B.) In Plaintiff's June 21, 2010 appeal to the Central Office, he stated:

> I disagree with, and hereby appeal the response of the Regional Office to my BP-10 because it avoids answering my question. Section 17541 of the Second Chance Act requires the BOP "to provide incentives for prisoner participation in skills development programs." 42 U.S.C. § 17541(a)(1)(G). I am currently taking a number of what I am told are "skills development courses," however, I do not know whether they

> are the skills development courses that would entitle me to the incentives mandated by section 17541 because no one will tell me what the incentives are or whether they exist, or what skills development courses I need to avail myself of any incentives. It is misleading to respond that I will be considered for halfway house 17-19 months pre-release, as I am not seeking to be considered for halfway house. I seek only to learn whether what I am doing now will qualify me for incentives, and what the incentives are. The Second Chance Act required that the BOP establish an incentive program regarding an inmate's participation in skills development programs within 90 days of the passing of the Act in April 2008, two full years ago. RELIEF REQUESTED: Please advise me of the incentives required by U.S.C. § 17541(a)(1)(G) [sic], and what skills development courses I need to take to avail myself of those incentives.

(Doc. 19 ¶ 8; Doc. 1, Ex. B.)  As of the date of the filing of the instant action, Plaintiff had not received a response to this appeal from the Central Office, and thus, Plaintiff has exhausted his available administrative remedies.  (*See* Doc. 19 ¶ 9.)

In his petition, Plaintiff seeks to compel the Defendants to provide him with a list of incentives for prisoner participation in skills development programming as he asserts is required by the Second Chance Act of 2007, 42 U.S.C. § 17541(a)(1)(G).  (*Id.* ¶ 10.)  The BOP routinely provides incentives for inmates who work well with others, who participate in the literacy program, apprenticeship training, vocational training courses, or who make exceptional accomplishments in work assignments.  (*Id.* ¶ 11.)  These incentives include monetary awards,

performance pay awards, bonus pay, special bonus pay, special awards, and other recognition. (*Id.* ¶ 12.)

Several Psychology Service Programs provide incentives upon successful completion, including:

    a.    The Non-Residential Drug Abuse Treatment Program (NRDATP), which provides for incentives which can include monetary awards of up to thirty dollars, maximum RRC placement, and tangible incentives such as books, t-shirts and cups;

    b.    The Residential Drug Abuse Program (RDAP), which provides for incentives, some of which are financial awards, nearer release transfers, consideration for maximum RRC placement time, early release under 18 U.S.C. § 3621(e), enhancement awards, and local incentives such as preferred living quarters or special recognition;

    c.    The Bureau Rehabilitation and Values Enhancement (BRAVE) program and the Challenge Program provide for financial awards, local incentives, tangible incentives, and graduation ceremonies;

    d.    For qualified inmates, the Mental Health Treatment Programs offer a series of programs dedicated to the management and treatment of the BOP's seriously mentally ill and behavior disordered inmates, and provide for local incentives such as preferred living quarters and early mainline, tangible incentives such as books and t-shirts, and graduation ceremonies.

(Doc. 19 ¶ 13; Doc. 19-1, BOP Program Statement 5330.11, *Psychology Treatment Programs*, Ch. 2 at 5-8, 19-21, Ch. 4 at 1-4, Ch. 5 at 1-5, Ch. 6 at 1-4.)

In addition to the Psychology Services Programs, the BOP offers incentives to encourage inmates to obtain a GED credential, which includes monetary awards, pay-grade promotions, consumables and certificates. (Doc. 19 ¶ 14.) Non-cash incentives, such as certificates, photographs, or consumable items are offered to encourage inmates to pursue a program of regular exercise. (*Id*. ¶ 15.)

Turning to the skills development plan, this plan is an individualized, assigned program for an inmate, designed by an inmate's unit team in order to maximize his transition back into society. (*Id*. ¶ 17.) Each inmate's unit team develops a program plan for an inmate which should include work and programming activities which will assist the inmate in developing skills to make a successful transition back into the community. (*Id*. ¶ 18.) Unit teams conduct program reviews at least once every 180 days to review inmates' progress in recommended programs and to recommend new programs based upon skills an inmate has gained during incarceration. (*Id*. ¶ 19.) Further, unit teams are required to conduct program reviews at least once every ninety days when an inmate is within twelve months of release. (*Id*. ¶ 20.)

BOP staff must complete a SENTRY-generated Program Review Report at all program reviews, which includes information on the inmate's needs and offers a correctional program designed to meet those needs. (*Id*. ¶ 21.) Plaintiff's Program

Review Report dated July 8, 2010, reflects that his unit team reviewed his skill levels in the following areas:

    a.    Academic - noting that he has a bachelors degree and recommending that he complete one class by the end of September and another by the end of December;

    b.    Vocational/Career - noting that he was fired from his employment within five years of incarceration and that he has no realistic career/job goals upon release, and recommending that he complete the job skills class or two other education release preparation classes by April 2012;

    c.    Interpersonal - noting that he has insufficient expected support to warrant a positive family ties and support system, and recommending that he participate in recreational activities;

    d.    Wellness - noting that Stark is overweight, that he requires medication on release, but that he does not qualify for any form of government assistance to pay for his medical care, and recommending that he enroll in work skills and mock job fair classes;

    e.    Mental Health - noting that prior to incarceration, Stark had a history of daily illegal drug use, a mental health diagnosis for depression and addiction to child pornography, and evidence of sexually inappropriate behavior;

    f.    Cognitive - noting his history as a sex offender, and recommending that he enroll in an adult continuing education course;

    g.    Character - noting insufficient variety of behaviors to warrant overall positive personal character and no effort to make amends for his crime, and recommending that he enroll in the victim impact group;

  h.  Leisure - noting positive use of his leisure time while incarcerated and recommending that he sign up for education classes; and

  i.  Daily Living - noting his lack of photo identification, a lack of a valid driver's license and lack of transportation upon release, and recommending that he save a portion of his income for release purposes and that he complete the release preparation program.

(*Id.* ¶ 22.)  Plaintiff's Program Review Report also indicates that he has completed thirty-six courses, which include 207 hours of vocational-technical instruction in culinary arts, twenty-two physical fitness classes, five music classes, and one fifteen-hour drug abuse program.  (*Id.* ¶ 23.)

  Further, Plaintiff is currently enrolled in the Non-Residential Drug Abuse Program, and if he successfully completes the four-month program, he will receive a thirty dollar incentive allotment, and he will also be independently reviewed by his unit team for additional RRC placement time.  (*Id.* ¶ 24.)  As a result of his participation in this program, Plaintiff has already received tangible incentives, including a cup, one pen, and two hardcover books.  (*Id.* ¶ 25.)

  Moreover, recommendations for placement in an RRC are ordinarily reviewed with the inmate and the unit team seventeen to nineteen months before each inmate's probable release date.  (*Id.* ¶ 26.)  An inmate's subsequent RRC referral to the Community Corrections Manager ("CCM") should be completed at

least sixty days prior to the maximum recommended range or date.  (*Id*. ¶ 27.)  Both the recommendations and referrals are based on assessments of inmate needs for services, public safety, the necessity of the BOP to manage its inmate population responsibly, and any other pertinent information that will assist in determining the appropriate length of RRC placement in a particular case.  (*Id*. ¶ 28.)  Further, when assessing an inmate for an RRC recommendation, the unit team reviews the resources of the facility contemplated, the nature of the circumstances of the inmate's offense, the history and characteristics of the inmate, any statement of the court that imposed the sentence, and any other pertinent policy statement issued by the United States Sentencing Commission.  (*Id*. ¶ 29, referring to 18 U.S.C. § 3621(b).)  The unit team also reviews the inmate's institutional programming, specifically, participation and/or completion of inmate skills development programs, and considers them separately from the five factors set forth in 18 U.S.C. § 3621(b) to determine whether additional RRC time is warranted as an incentive under 28 U.S.C. § 17541.  (Doc. 19 ¶ 30.)  As of the date of the filing of Defendants' motion for summary judgment, Plaintiff had not yet been reviewed for RRC placement.  (*See id*. ¶¶ 31-34.)

    **B.**    **Procedural History**

Plaintiff filed his petition for a writ of mandamus on January 3, 2011. (Doc. 1.) By order dated January 19, 2011, the court directed service of the petition on Defendants. (Doc. 5.) Defendants filed a response to the petition on April 4, 2011. (Doc. 10.) On April 19, 2011, Plaintiff filed a motion for summary judgment. (Doc. 11.) Defendants filed a cross-motion for summary judgment on May 20, 2011. (Doc. 20.) Both motions are fully briefed and thus ripe for disposition.

## II.   Standards of Review

### A.   Motion to Dismiss

Defendants have filed a motion which, in part, seeks dismissal of the petition on the grounds that Plaintiff's petition fails to state a claim upon which relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion, however, goes beyond a simple motion to dismiss under Rule 12(b)(6) because it is accompanied by evidentiary documents outside the pleadings, which contravene Plaintiff's claims. Rule 12(d) provides as follows:

> If, on a motion under Rule 12(b)(6) or (12)(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The court will not exclude the evidentiary materials accompanying Defendants' motion to dismiss because Plaintiff has also been given a reasonable opportunity to present material relevant to the motion. Thus, Defendants' motion to dismiss and for summary judgment shall be treated solely as seeking summary judgment.

### B. Motion for Summary Judgment

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply

sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

Further, the court is permitted to resolve cross-motions for summary judgment concurrently. *InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F.Supp.2d 230, 235 (M.D.Pa.2004) (describing concurrent resolution of cross-motions for summary judgment as "a formidable task"); 10A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2720 (3d ed.1998). When doing so, the court is bound to view the evidence in the light most favorable

to the non-moving party with respect to each motion.  Fed. R. Civ. P. 56; *Raymond Proffitt Found. v. U.S. Envtl. Prot. Agency*, 930 F. Supp. 1088, 1096 (E.D. Pa. 1996).

### III. <u>Discussion</u>

In his petition for a writ of mandamus, Plaintiff asserts that Defendants have failed to provide him with a list of incentives for participation in skills development programs that would enable him to select those courses that would permit him to maximize the length of his RRC placement.  Because prison officials have failed to provide him with such a list, Plaintiff asserts that BOP offers no incentives for participation in skills development programs.  As a result, Plaintiff is seeking a court order directing Defendants to comply with 42 U.S.C. § 17541(a)(1)(G) by providing incentives for prisoner participation in skills development programming.  Plaintiff argues that there are no genuine issues of material facts concerning any of these assertions, and that he is entitled to summary judgment in his favor.

For their part, Defendants are seeking summary judgment in their favor because, *inter alia*, Plaintiff has failed to state an actionable mandamus claim because the development and implementation of inmate skills development

14

programs and any incentives offered in conjunction with them are discretionary functions of the BOP. Having thoroughly reviewed the briefs and evidence submitted by the parties, the court agrees with Defendants' argument and will therefore grant summary judgment in favor of Defendants and against Plaintiff.

As stated above, Plaintiff seeks relief by a petition for a writ of mandamus pursuant to 28 U.S.C. § 1361. Plaintiff's petition is identical to a claim raised in the District of New Jersey in two other matters, *Smith-Bey v. Director for the Bureau of Prisons*, 2011 WL 4888902, Civ. Action No. 11-3927 (D. N.J. Oct. 11, 2011) and *Richardson v. Director for the Bureau of Prisons*, 2011 WL 809869, Civ. Action No. 10-4939 (D. N.J. Feb. 28, 2011). The court in those cases denied the petitions for lack of merit. The Third Circuit Court of Appeals has already subsequently affirmed *Richardson*. *See Richardson v. Director for the Federal Bureau of Prisons*, 2011 WL 2559423, No. 11-1663 (3d Cir. June 29, 2011). For the same reasons as those stated in *Smith-Bey* and *Richardson*, this court will deny the instant petition for lack of merit.

"[T]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Under § 1361, "the test for jurisdiction is whether mandamus would be an appropriate

15

means of relief." *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980) (citing *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969)). Mandamus is considered an "extraordinary remedy." *Mallard v. United States Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296, 309 (1989). As a "drastic remedy," it is "seldom issued and its use is discouraged." *In re Patenaude*, 210 F.3d 135, 140 (3d Cir. 2000) (citations omitted).

To ensure that the writ will only issue in appropriately extraordinary circumstances, a party seeking issuance of such a writ must demonstrate (1) that a public official has a well-defined and mandatory duty to perform a certain act, (2) that the petitioner has a clear and indisputable right to have that act performed, and (3) that no other adequate remedy is available. *See Mallard*, 490 U.S. at 309; *Heckler v. Ringer*, 466 U.S. 602, 616 (1984); *Jones*, 609 F.2d at 781. The duty owed by the government must be "a legal duty which is a specific, plain ministerial act 'devoid of the exercise of judgment or discretion.' An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt." *Harmon Cove Condo. Assoc. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987) (quoting *Richardson v. United States*, 465 F.2d 844, 849 (3d Cir. 1972)). Even where this burden is met, the court has discretion to deny the writ, "even when technical grounds for mandamus are satisfied." *Coombs v. Staff*

*Attorneys*, 168 F. Supp.2d 432, 434-35 (E.D. Pa. 2001) (citing *In re Patenaude*, 210 F.3d at 141).

Here, as in *Smith-Bey* and *Richardson*, the court finds no basis for mandamus relief. Plaintiff cannot show that he has a clear and undisputable right to have the act requested performed. The statute that Plaintiff relies upon does not require specific incentives, nor does it require a formal list, contrary to what Plaintiff asserts. Rather, 42 U.S.C. § 17541(a)(2) expressly states that "[i]ncentives for a prisoner who participated in reentry and skills development programs [ ] *may, at the discretion of the Director*, include . . . some other incentives [beyond community confinement] *as the Director considers appropriate* . . . ." *Id.* (emphasis added). Thus, as stated by the court in *Smith-Bey* and *Richardson*, "the relief Petitioner actually seeks requires a discretionary determination and is not a clear cut ministerial function of the BOP." *Smith-Bey*, 2011 WL 4888902, at *2 (citing *Richardson*, 2011 WL 809869, at *2). *See also Richardson*, 2011 WL 2559423, at *1 (". . . [42 U.S.C. § 17541(a)(2)] does not require that any particular incentives be given. We agree with the District Court that because the statute grants the Bureau of Prisons wide discretion in developing incentives, mandamus relief is not available."). Further, Plaintiff has not demonstrated that he has no other remedy. As a result, Plaintiff has failed to show

17

any extraordinary factors that would warrant the granting of a petition for a writ of mandamus.[1]  The court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment.

## IV.   Conclusion

Based on the foregoing determination that Plaintiff's claim is without merit, summary judgment will be granted in favor of Defendants and against Plaintiff. An appropriate order will issue.

  s/Sylvia H. Rambo<br>
  United States District Judge

Dated:  November 17, 2011.

---

[1] Because Plaintiff has failed to demonstrate initially that he is entitled to a petition for a writ of mandamus, the court need not discuss his other assertions that he is entitled to a writ of mandamus under 28 U.S.C. § 2201 or the APA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES STARK,** | : |
| **Plaintiff** | : CIVIL NO. 1:CV-11-00003 |
| v. | : **(Judge Rambo)** |
| **ERIC J. HOLDER, JR.,** *et al.*, | : |
| **Defendants** | : |

# **O R D E R**

**AND NOW**, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1) Plaintiff's motion for summary judgment (Doc. 11) is **DENIED**.

2) Defendants' motion for summary judgment (Doc. 20) is **GRANTED**.

3) The Clerk of Court shall **ENTER** judgment in favor of Defendants and against Plaintiff.

4) The Clerk of Court shall **CLOSE** this case.

                                               s/Sylvia H. Rambo
                                               United States District Judge

Dated: November 17, 2011.